**THERIO v. SCOTT & BRES et al.**

No. 16506.

Court of Appeal of Louisiana. Orleans.

May 2, 1938.

H. M. Robinson, of New Orleans, for plaintiff-appellant.

John May, of New Orleans, for defendants-appellees.

WESTERFIELD, Judge.

Wilkinson Therio brought this suit against his employers, Scott & Bres, and their insurance carrier, the Travelers Insurance Company, for 100 weeks' compensation at the rate of $20 per week. He alleges that on June 26, 1934, while working for his employers as a member of a pile-driving crew in the parish of Morehouse, he was accidentally struck in the face by a swinging pipe which knocked him down and caused him to strike his face on a piece of timber lying on the ground; that he suffered a compound fracture of his nose and a deep cut about three inches long near the inside corner of his right eye and extending towards his nose; that as a result of the accident he has a permanently crooked and malformed nose causing serious disfigurement and also impairing the physical function of his nose.

Defendants answered admitting the employment of plaintiff, its hazardous character, the occurrence of the accident, the fracture of plaintiff's nose and the cut on plaintiff's forehead, but denied that the accident resulted in any disfigurement of plaintiff's face or features, or in any impairment of the physical functions of his nose.

There was judgment below in defendants' favor dismissing plaintiff's suit, and he has appealed.

Scott & Bres is a partnership doing business as general contractors. Plaintiff was injured while working with a pile-driving crew near Perryville, La. Immediately after the accident he was taken to the St. Francis Sanitarium, Monroe, La.; about twenty miles distant from the scene of the accident. He remaihed in the sanitarium six days and received medical and surgical attention from Drs. Perot and Bennett, at the expense of the insurance carrier of his employer. He returned to work on July 5, 1934, and remained until his employer's work in Perryville was concluded, and thereafter returned to his home in New Orleans. On August 6, 1934, he was sent by the defendant insurance carrier to the office of Drs. Phillip & Harrison where X-rays of his nose were taken. Dr. Harrison, after examining the X-ray plates which had also been interpreted by Dr. Menville, declared that in his opinion plaintiff had, at that time, completely recovered.

On February 5, 1935, this suit was instituted based upon paragraph (d) 16 of subdivision 1 of section 8 of Act No. 20 of 1914, as amended by Act No. 242 of 1928 (the Louisiana Workmen's Compensation Law), which reads as follows: "In cases not falling within any of the provisions already made where the employee is seriously permanently disfigured about the face or head or where the usefulness of a physical function is seriously permanently impaired, the Court may allow such compensation as is reasonable and as is in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."

The question presented, therefore, is whether the plaintiff was "seriously permanently disfigured about the face or head" or the "usefulness of a physical function" (nasal) "seriously permanently impaired."

The disfigurement of plaintiff is alleged to result from a "Hump" on the bridge of his nose, said to have been caused by the accident, and upon the presence of a scar which is described by the trial judge as follows: "The plaintiff has a scar on the

right hand side of his forehead which I would estimate to be an inch and a quarter in length. The scar runs diagonally across the lower part of the forehead and begins at a point on the right hand side of the bridge of the nose and extends diagonally towards the right hand side of the plaintiff's forehead".

Therio was present in the courtroom when this case was argued, and we were invited by counsel to examine his appearance, which we did without discovering any serious disfigurement resulting from the scar which, at that time, some four years after the accident, appeared very insignificant and in a fair way of disappearing. His nose is of the "Aquiline type," or, as it is frequently referred to in the testimony, a "roman nose." We would say that it was an exaggerated type of roman nose, the contour of which is arched to such an extent as to suggest the segment of a sphere. Whether such a nose may be said to be disfiguring in all cases, having due regard to individual facial characteristics, might well be doubted. It must be conceded that the nose is the most prominent characteristic of the face, and that, consequently, its disfigurement is a facial calamity. However, much depends upon its environment. A roman nose on the face of a Cherub would offend our sense of cosmetic symmetry, but surrounded by the classic countenance of Ulpian or Papinian it would present quite a different aspect. What is referred to in this record so disdainfully as a "hump" would, when seen upon the face of Augustus Caesar, appear as an appropriate facial adornment. We are uninformed concerning plaintiff's lineage and, therefore, cannot say whether his proximate or remote ancestry justify the shape of his nose; but we can say, for we have seen him, that his face is not disfigured by that feature. Moreover, Mr. Scott, Mr. Bres, his employers, Miss Morphy, a stenographer in the employ of Scott & Bres, and James Heaton, the foreman of the pile-driving crew of which Therio was a member when injured, who had known him about twelve years, testified that his nose, whatever may be said or thought concerning its present shape, was no different in appearance before the accident.

We now turn our attention to the second contention to the effect that the usefulness of plaintiff's nose was seriously and permanently impaired. On this point the argument is that the accident caused a deflection of the septum and an angular projection of bony structure about three-quarters of an inch within the left nostril, causing partial occlusion of the left nostril and a compensatory enlargement of the turbinates in the other nostril.

Dr. E. G. Walls, a specialist in diseases of the nose and throat, examined Therio on October 15, 1935. He testified on his behalf that the septum of the human nose is composed of part bone and part cartilage, and that plaintiff's septum was deflected towards the left to the extent of three-quarters of an inch in the left vestibule of the nose and in the cartilaginous part a sharp angular deflection, and that septal deflections of the extreme angular type are usually due to trauma. He was unable to say that this septal deflection existed prior to the accident, but was inclined to the opinion, in view of the character of the plaintiff's septal deflection, that it was not.

As against the testimony of Dr. Walls, defendants offered the testimony of Dr. Perot of Monroe, which had been taken by deposition, and Dr. Roy Harrison of New Orleans. Dr. Perot, who saw plaintiff just after the accident and treated him during his stay in the St. Francis Sanitarium, stated that plaintiff's injury consisted of a transverse fracture of the nasal bone with "alignment of the nose in good apposition"; that the treatment consisted in the use of nasal splints and packs and that there was no indication of a breaking down of the bridge of the nose; there was a deflection of the nasal septum to the left, "but that condition existed prior to the date of the accident." He first saw the plaintiff on June 26, 1934, and discharged him on July 7th, when he believed plaintiff had effected a complete recovery.

Dr. Harrison testified that many persons have deflected septums for many years without discomfort and often without their knowledge; that he, himself, has a deflected septum which has caused him no inconvenience during the past fifteen years. Edward Bres, one of the defendants, stated on the witness stand that he had called upon Therio in the St. Francis Sanitarium, and Therio declared that his broken nose caused him little concern because he had broken his nose before.

On the record before us we cannot say that plaintiff has established with legal certainty that the function of his nose has been seriously impaired as a result of the

accident, particularly in view of the finding of the trial court to the contrary.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.